UNITED STATES

v.

Andrew P. RODRIGUEZ, 559 71
0028, Private (E–1), U.S.
Marine Corps.

NMCM 95 02166.

U.S. Navy–Marine Corps
Court of Criminal Appeals.

Sentence Adjudged 29 March 1995.

Decided 8 Jan. 1997.

LT Estela I. Velez, JAGC, USNR, Appellate Defense Counsel.

Maj J. Steve Hinkle, USMCR, Appellate Government Counsel.

Before DOMBROSKI, C.J., and LUCAS and OLIVER, JJ.

LUCAS, Judge:

Contrary to his pleas, the appellant was convicted by special court-martial, officer members, of a single violation of Article 112a, Uniform Code of Military Justice, 10 U.S.C.

§ 912a(1994)[hereinafter UCMJ], for use of methamphetamine. The allegation of drug abuse was based on a urinalysis that tested positive for the contraband drug. We have examined the record of trial, the assignments of error,[1] and the Government's response thereto. We conclude that the Charge and Specification must be dismissed.

■ In Assignment of Error III, the appellant contends that his guilt was not established beyond a reasonable doubt. We agree.

The Government's case-in-chief consisted of a Department of Defense laboratory report indicating that the appellant's urine sample had tested positive for methamphetamine together with the testimony of an expert from that laboratory. As is usual in these cases, the expert testified about the procedures used by the laboratory to analyze the appellant's urine sample and explained the results of that analysis. He also gave an opinion that ingestion of the drug probably occurred about 36 to 48 hours before the urine sample was collected. The expert could not rule out innocent ingestion or that the appellant may not have noticed the physiological effects of the contraband drug if he innocently ingested it during an evening of beer drinking.

The appellant testified that beginning about 48 hours before his urinalysis he drank beer with two friends in his barracks, then went with them to a club in town. The appellant admitted that he knew one of those friends, Allen, to be a methamphetamine user who was awaiting an involuntary administrative discharge for abusing that drug. The appellant testified that he consumed several glasses of beer during the evening while seated at a table with Allen and the other Marine. The appellant indicated that be-

cause he has a weak bladder, he visited the club's head facility about every 30 minutes. While gone, he left his partially finished glasses of beer on the table. Late in the evening, while still at the club, he began experiencing unusual symptoms of extreme nervousness, agitation, and excess energy. The appellant testified that at one point during the evening his two companions, Allen and the other Marine, laughed and pointed at him, but did not explain why. All three subsequently returned to their barracks and the appellant indicated that he was so full of energy and so nervous that he could not sleep all night.

The appellant testified that he suspected that someone had spiked his beer with a drug. When he reported to work the next morning he passed his concerns about a spiked drink to his immediate supervisor. That supervisor's testimony confirmed that part of the appellant's testimony and also that the appellant passed his concern to more senior Marines in the chain-of-command that same day.

The following day (2 days after the visit to the club), the appellant's urine sample was collected by his command. He participated in what may have been a random urinalysis at his unit. *See* MIL.R.EVID. 313, MANUAL FOR COURTS–MARTIAL, UNITED STATES (1995 ed.). At trial, the appellant did not contend that he was improperly targeted for a urinalysis as a result of raising concerns about possible ingestion of a contraband drug to his supervisors, and that the results of the laboratory analysis were therefore inadmissible. The appellant also did not contest the procedures used to collect his urine sample, whether the urine analyzed by the laboratory was his, the laboratory procedures used to analyze the sample, or the result of that analysis. Those potential issues were therefore waived.

---

1. I. THE MILITARY JUDGE ERRED BY INSTRUCTING THE MEMBERS ON THE THEORY OF DELIBERATE AVOIDANCE BECAUSE THE EVIDENCE WAS INSUFFICIENT TO RAISE THE ISSUE.

II. THE MILITARY JUDGE ERRED WHEN HE DECLINED TO INSTRUCT THE MEMBERS ON THE DEFENSE'S THEORY OF THE CASE, INNOCENT INGESTION, BECAUSE: (1) THE EVIDENCE SUPPORTED THE INSTRUCTION; (2) APPELLANT WAS ENTITLED TO AN IN-

STRUCTION ON THE LAW APPLICABLE TO HIS CASE; AND, (3) THE MILITARY JUDGE'S INSTRUCTIONS DID NOT ADDRESS THIS DEFENSE.

III. THE MEMBERS ERRED IN FINDING APPELLANT GUILTY OF THE CHARGE AND SPECIFICATION THEREUNDER, WHERE THE EVIDENCE PRODUCED BY THE GOVERNMENT WAS INSUFFICIENT TO ESTABLISH GUILT BEYOND A REASONABLE DOUBT.

Mil.R.Evid. 313(B); Rules for Courts–Martial 905(B)(3), 905(E), 906(B)(13), Manual for Courts–Martial, United States (1995 ED.) [HEREINAFTER R.C.M.].

Allen, a civilian at the time of trial and testifying without a grant of immunity, indicated that he had been separated from the Marine Corps because of his methamphetamine use. Allen indicated that while he, the appellant, and the third Marine drove to the club from the barracks, he surreptitiously snorted methamphetamine from the tip of his finger. Allen indicated that he was a passenger in the front seat, that the appellant was in the back seat, that the car radio was on, and that he doubted that the appellant saw or heard him ingest the drug. During his testimony, the appellant denied seeing or hearing Allen ingest the drug.

Allen further testified that during the evening at the club, he may have suggested in general terms to the appellant that he try methamphetamine, but, if he did, the appellant declined. Allen indicated that, as a joke, he later decided to put some of the drug into the appellant's glass of beer, without his knowledge, while the appellant was away from the table. He indicated that neither the appellant nor the other Marine at the table saw what he did. Allen indicated that after the appellant returned to the table and drank his beer, Allen told the other Marine what he had done and they both laughed at the appellant. Finally, Allen testified that the following day the appellant approached him and asked whether he had put something into his beer. This confirmed the appellant's testimony regarding such a confrontation with Allen the day after the club incident.

A recently honorably discharged Marine and good friend of the appellant's, Zemke, testified that he and the appellant were together much of the time for a 2–year period before Zemke's discharge and that he never saw the appellant abuse drugs. Zemke also indicated that he was at the club that night, but not with the appellant. He indicated that at one point during the evening he visited the appellant's table and heard Allen suggest that the appellant try methamphetamine, but the appellant refused.

Two of the appellant's supervisors testified that, the morning after the club incident, the appellant raised his concerns about a spiked drink and that those concerns were passed up the chain of command. There was no evidence presented regarding what those command representatives did about the report, if anything.

This Court may affirm only such findings of guilty as it finds correct in both law and fact. Article 66(c), UCMJ, 10 U.S.C. § 866(c). The test for legal sufficiency is whether, considering the evidence in the light most favorable to the Government, a rational fact finder could have found all the essential elements of the offense beyond a reasonable doubt. *United States v. Turner*, 25 M.J. 324 (C.M.A.1987). When applying this test, we are bound to draw every reasonable inference from the record in favor of the prosecution. *United States v. McGinty*, 38 M.J. 131 (C.M.A.1993). The test for factual sufficiency is whether, after weighing the evidence in the record and making allowances for not having personally observed the witnesses, we are convinced of the appellant's guilt beyond a reasonable doubt. *Turner*, 25 M.J. at 325.

We are not convinced of the appellant's guilt beyond a reasonable doubt. The findings and sentence will therefore be set aside and a rehearing not authorized. Article 66(d), UCMJ, 10 U.S.C. § 866(d).

Although our resolution of Assignment of Error III decides this case, Assignments of Error I and II are worth discussion.

In this contested drug-abuse prosecution, the Government had the burden of establishing beyond a reasonable doubt that the appellant knew he was ingesting a substance and also that he knew the substance being ingested was a contraband drug. *United States v. Mance*, 26 M.J. 244 (C.M.A. 1988). Establishment of those two knowledge elements negates the possibility that the appellant was either ignorant of the fact that he was ingesting a foreign substance or, if he was aware that he was ingesting a foreign substance, that he was mistaken about the nature of that substance. Because of the instructions given to the members in this regard, including a reference to innocent

ingestion, there was no need to also provide the defense requested instruction on innocent ingestion. R.C.M. 920; *United States v. Damatta–Olivera*, 37 M.J. 474, 478 (C.M.A. 1993), *cert. denied*, 512 U.S. 1244, 114 S.Ct. 2760, 129 L.Ed.2d 875 (1994). Assignment of Error II, therefore, is without merit.

■ In Assignment of Error I, the appellant contends that the trial judge committed prejudicial error by granting a Government request to instruct the members on the theory of deliberate avoidance. We agree. Under the specific facts of this case, we hold that the trial judge committed reversible error by giving such an instruction over the objection of the trial defense counsel.

The defense at trial was one of innocent ingestion. The appellant testified that he did not knowingly ingest methamphetamine that evening and had never ingested methamphetamine. Instead, he contended that his unattended glass of beer must have been spiked with the drug without his knowledge while he visited the club head facilities several times during the evening. In effect, the appellant contended that he was ignorant of the fact that methamphetamine had been placed in his beer.

The trial counsel countered the defense presentation with the successful request for an instruction permitting the members to convict the appellant if they found that he either had actual knowledge of the presence and contraband nature of a substance he ingested or that he consciously, deliberately, and wrongfully avoided acquiring such actual knowledge after becoming aware that there was a high probability that a contraband drug had been put in his drink. *See* MANUAL FOR COURTS–MARTIAL, UNITED STATES (1995 ed.), Part IV, ¶ 37(c)(11). That is the theory of deliberate and wrongful ignorance or deliberate avoidance of a critical fact.

The trial counsel correctly contended, and the trial judge agreed, that if the appellant's requisite deliberate and wrongful ignorance were established, the appellant would be deemed to have acquired constructive knowledge that a contraband drug had been put in his beer and he would thereby incur the same criminal culpability as if he had actual knowledge of the presence and nature of the substance. *United States v. Newman*, 14 M.J. 474, 478 (C.M.A.1983). *See also* Judge Cox' concurring opinion in *Mance*, 26 M.J. at 257.

There was no direct evidence that the appellant had actual knowledge of the presence of a foreign substance in his beer or that the substance was methamphetamine. There was no direct evidence that he otherwise knowingly ingested the drug. In fact, all the direct evidence ran counter to that conclusion. By case law, because of the positive laboratory result, the members were permitted to infer that the appellant had such knowledge. *Id.* at 254. The defense of innocent ingestion directly attacked the knowledge elements and the permissible inference of knowledge. In our opinion, the decision by the trial judge to give the deliberate avoidance instruction permitting the members to convict the appellant based upon a theory of deliberate ignorance and resultant constructive knowledge could very well have determined the outcome of this case. After carefully considering the entire record, we conclude that there was insufficient evidence to support the decision by the trial judge to give such an instruction.

The disputed issue pertinent to the deliberate avoidance instruction concerned the appellant's level of awareness that a contraband drug was in his beer. *Newman* would permit an instruction on the theory of deliberate avoidance and resultant constructive knowledge only if the appellant was aware that there was a high probability that a contraband drug was in his beer, and he nevertheless consciously and deliberately avoided acquiring actual knowledge of that fact. *Newman*, 14 M.J. at 478. Following the rationale of *Newman*, the appellant would not be permitted to escape criminal culpability by remaining purposefully and deliberately ignorant if he was aware of such a high probability. *Id.* at 479.

Even though there was no direct evidence that the appellant was aware that Allen possessed methamphetamine that evening, or that Allen had ingested methamphetamine in the car during the trip to the club, or that Allen had put some of the drug into the

appellant's beer, the trial judge nevertheless considered those possibilities as factors justifying his decision to give the deliberate avoidance instruction. He also considered that the appellant was with a person he knew to be a methamphetamine user, and that Allen may have suggested to the appellant at the table that evening that he try methamphetamine. Record at 152.

The evidence was insufficient to support the proposition that the appellant was aware of a high probability that Allen may have spiked his beer. Indeed, based upon the record before us, we find no high probability existed at all. Therefore, there was no justification for the instruction.

There was no clear linkage between the factors used by the trial judge to justify the instruction and the high probability factual issue. We know with certainty that the appellant was aware that Allen was a drug abuser. That, by itself, does not lead us to conclude that there was a high probability that Allen either put, or would put, a contraband drug in the appellant's drink. Similarly, none of the other evidence, by itself or in combination, would tend to establish the requisite high probability. In effect, what the prosecutor asked for, and got, was a vehicle to undercut the defense of innocent ingestion merely because the appellant was in the presence of a known drug abuser. There was no evidence that the appellant saw or heard Allen ingest a contraband drug in the car or that the appellant knew that Allen had such a drug at the table. There was no evidence that the appellant saw or was told that Allen put, or might have put, something in his beer glass, or even that Allen touched the glass or put his hand near it. Therefore, we are unwilling to impute, to the appellant, the requisite constructive knowledge rendering him criminally culpable. Absent any other deficiency in this case, we would have set aside the findings and sentence based on Assignment of Error I and authorized a rehearing.

Accordingly, because of our resolution of Assignment of Error III, the findings of guilty and sentence are set aside and the Charge and Specification are dismissed. The record is returned to the Judge Advocate General.

Chief Judge DOMBROSKI and Judge OLIVER concur.